IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

R&R MEDIA GROUP, LLC,

                    Plaintiff,

    v.

PEGGY LAURITSEN,

                    Defendant.

OPINION and ORDER

24-cv-856-jdp

---

Plaintiff R&R Media Group, LLC purchased a company, Peggy Lauritsen Design Group (PLDG) from defendant Peggy Lauritsen pursuant to a stock purchase agreement. R&R Media now asserts claims for breach of contract and fraudulent inducement, alleging that Lauritsen concealed the company's declining prospects during the sales process by manipulating financial data and by failing to disclose that the company's largest client was dissatisfied with its work.

Lauritsen moves for partial summary judgment on two issues. Dkt. 26. First, Lauritsen contends that R&R Media failed to provide adequate notice of some of its breach of contract claims under the stock purchase agreement, because R&R Media did not tell Lauritsen the specific sections of the stock purchase agreement that it believed Lauritsen had violated. The court concludes that R&R Media was not required to identify specific sections of the agreement in its notice, so it will deny the motion for partial summary judgment on this issue.

Second, Lauritsen contends that R&R Media is not entitled to attorney, expert, and consultant fees under the stock purchase agreement. The court agrees that the stock purchase agreement does not allow for fee-shifting. But R&R Media may be entitled to fee-shifting on other grounds, so the motion for partial summary judgment will be denied on this issue as well.

UNDISPUTED FACTS

The following facts are undisputed.

Plaintiff R&R Media Group, LLC, is a business entity wholly owned and operated by Sara Rahn. Rahn began negotiating with defendant Peggy Lauritsen to buy her design and marketing company, Peggy Lauritsen Design Group, Inc. (PLDG). On April 4, 2023, the parties executed a stock purchase agreement describing the terms of the sale. Dkt. 31-1.

In the stock purchase agreement, Lauritsen agreed to indemnify R&R Media from certain losses resulting from breach of covenants, representations, and warranties in the agreement. Dkt. 31-1, §§ 7.1–7.2. The agreement specified that the covenants, warranties, and representations would survive for 18 months after closing. *Id.* § 7.1. As a precondition to suit, R&R Media was required to provide a written claim notice about alleged breaches prior to the expiration of the survival period. *Id.* Once a written claim notice was provided, the agreement specified that "the representation, warranty, covenant, or agreement that is the subject of such claim shall survive, to the extent of such claim only, until such claim is resolved." *Id.*

The sale of PLDG closed on June 16, 2023. On January 23, 2024, R&R Media sent Lauritsen the first of two written claims notices, alleging that Lauritsen had failed to disclose that PLDG's largest client, UnitedHealth Group, had been dissatisfied with its work. Dkt. 31-2. As a consequence, R&R Media said that UnitedHealth Group had recently terminated work valued at $850,000 per year and was threatening to remove PLDG from its list of preferred vendors entirely. R&R Media asserted that Lauritsen's failure to disclose the problems with UnitedHealth Group violated § 3.19(a) of the stock purchase agreement, in which Lauritsen had represented that "The Company is not engaged in any material dispute with any Material Customer, and no such customer has notified or, to the Company's Knowledge, indicated to

the Company that it intends to terminate or materially reduce its business relations with the Company." Dkt. 31-1, § 3.19(a). R&R Media demanded that Lauritsen indemnify it under the stock purchase agreement for losses related to the misrepresentation. Dkt. 31-2. Lauritsen denied the claims notice via counsel on February 9, 2024, asserting that UnitedHealth Group's dissatisfaction was not a "material dispute" under § 3.19(a) of the stock purchase agreement.

On August 23, 2024, R&R Media sent Lauritsen a second claims notice, which expanded on the allegations in the first notice. Dkt. 29-2. In addition to the issues with UnitedHealth Group, R&R Media alleged that Lauritsen had made other misrepresentations and engaged in fraudulent activity connected with the sale of PLDG, including double-counting pre-bill revenue, inflating sales projections, paying secret bonuses to employees, and mass-deleting emails to cover up the fraudulent scheme. R&R Media supported its allegations with more than 60 pages of evidence, mostly from internal PLDG emails in the months before and after the sale. Dkt. 29-2. Lauritsen rejected R&R Media's second claims notice on September 12, 2024. Dkt. 29-3. R&R Media responded with this lawsuit.

This court has jurisdiction over this action under 28 U.S.C. 1332. The parties' citizenship is diverse because Lauritsen is a citizen of Minnesota and R&R Media is a limited liability company whose sole member is Sara Rahn, a citizen of Wisconsin. Dkt. 55 (stipulation on jurisdiction). The amount in controversy exceeds $75,000 because R&R Media seeks recission of the stock purchase agreement, under which she agreed to pay more than $2 million for PLDG.

ANALYSIS

R&R Media asserts claims against Lauritsen for fraud and breach of contract, contending that Lauritsen misrepresented material information about PLDG's finances and used fraudulent accounting practices to artificially inflate the sales price. Neither party has moved for summary judgment on the merits of R&R Media's claims. Instead, Lauritsen moves for partial summary judgment on two narrower issues. First, she contends that R&R Media didn't provide adequate notice for some of its claims as required by the stock purchase agreement. Second, she contends that R&R Media's request for attorney, expert, and consultant fees fails because the stock purchase agreement did not provide for fee-shifting.

Resolving Lauritsen's motion requires this court to interpret the stock purchase agreement. The parties agree that Delaware law applies to the parties' claims under that agreement. *See* Dkt. 31-1, §§ 11.10(a). The court must interpret the agreement as it would be understood by a reasonable person in the position of the parties. *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023). Individual provisions must be read in light of the entire agreement and with an understanding of the commercial context between the parties. *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926 (Del. 2017). Clear and unambiguous language should be given its plain meaning. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

## A.  Notice of claims

Under the stock purchase agreement, R&R Media was required to provide Lauritsen with a written notice of claims prior to filing suit for breach of contract:

> No Person shall be liable for any claim for indemnification under this ARTICLE VII unless written notice (a "Claim Notice") specifying in reasonable detail the nature of the claim for indemnification, circumstances giving rise to the claim, the date

of such occurrence (to the extent known), and a good faith estimate of the amount of the claim, is delivered by the party seeking indemnification to the party from whom indemnification is sought . . . .

Dkt. 31-1, § 7.1.

R&R Media submitted two claims notices pursuant to § 7.1. Dkt. 31-2 and Dkt. 29-2. It asserted that Lauritsen had violated §§ 3.6(h), 3.19, 3.22, 8.4, 8.5, and 9.1 of the agreement by failing to disclose issues with UnitedHealth Group, double counting pre-bills, giving secret bonuses to employees, and mass-deleting emails. But in its complaint and in discovery, R&R Media asserted that Lauritsen's conduct also violated other sections of the agreement, specifically §§ 2.7, 3.5, 3.6(j), 3.6(l), 3.6(n), 3.6(o), 3.9(c), and 3.17(a). Lauritsen contends that R&R Media failed to provide adequate notice for its claims based on these sections, because it did not identify those sections of the agreement in the claims notices. As a result, Lauritsen says that R&R Media's claims based on these sections are now time-barred, because the agreement provided that most of the representations, warranties and covenants expired 18 months after closing if no claim was brought before then.[1] Dkt. 31-1, § 7.1.

In response, R&R Media argues that the stock purchase agreement did not require it to identify specific sections of the agreement in its claims notices. R&R Media relies on *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35 (Del. Ch. 2015), in which the court held that identifying specific sections of a contract in a claims notice is not necessary unless the parties actually bargained for that requirement. In *Prairie Capital*, the parties' stock purchase

---

[1] In her brief, Lauritsen raised the issue of timeliness as a separate argument from the notice of claims issue. But the stock purchase agreement states that once a party provides a written notice of claims, the warranties, representations, or covenants at issue continue to survive until the claims are resolved. *Id.* Lauritsen's timeliness argument is really a rehash of her notice of claims argument, so the court need not discuss it separately.

agreement required written notice of indemnification claims "with reasonable supporting details for such claim." *Id.* at 66. The buyer submitted a claims notice but failed to specifically allege a breach of § 3.15 of the agreement; the seller then argued that the buyer had forfeited its claims based on § 3.15 by failing to raise them in the claims notice. The court disagreed, reasoning: "The [stock purchase agreement] does not require that the Buyer specify the precise section that was breached; it only requires reasonable notice of the claim. The parties could have bargained for an obligation to specify a particular section, but they did not do so here." *Id.* The court concluded that the buyer had adequately notified the seller of its § 3.15 claim by giving a detailed description of the facts underlying that claim. *Id.*

*Prairie Capital* is instructive. The Delaware Supreme Court recently cautioned that preconditions to suit, including notice requirements, must be expressed "clearly and unambiguously" to avoid the risk of unintentional forfeiture of claims. *Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1167–68 (Del. 2025) (internal quotations omitted). In this case, the stock purchase agreement required R&R Media to "specify[] in reasonable detail the nature of the claim for indemnification, circumstances giving rise to the claim, the date of such occurrence (to the extent known), and a good faith estimate of the amount of the claim." Dkt. 31-1, § 7.1. As in *Prairie Capital*, nothing in those terms clearly and unambiguously required R&R Media to identify the sections of the agreement that it believed Lauritsen had breached. Accordingly, the court concludes that R&R Media did not forfeit its claims under §§ 2.7, 3.5, 3.6(j), 3.6(l), 3.6(n), 3.6(o), 3.9(c), and 3.17(a) by failing to identify those sections of the agreement in the claims notices.

Lauritsen resists this conclusion on three grounds First, she contends that the stock purchase agreement *did* require R&R Media to identify specific sections. Lauritsen points to

6

the requirement to specify the "nature of the claim," arguing that this should be interpreted to mean the legal basis for the claim, not just the factual basis. Lauritsen says that the factual basis is covered by the requirement to specify the "circumstances giving rise to the claim," so the "nature of the claim" requirement would be superfluous unless it meant the legal basis.

Lauritsen is correct that contracts should be interpreted wherever possible to avoid surplusage. *Hill v. LW Buyer, LLC*, No. cv 2017-0591, 2019 WL 3492165, at *7 (Del. Ch. July 31, 2019). But even if Lauritsen is right that "nature of the claim" means its legal basis, the agreement requires only "reasonable detail," and Lauritsen doesn't explain why that would require identifying specific sections of the agreement. The Delaware Court of Chancery already rejected that position in *Horton v. Organogenesis, Inc.*, No. cv 2018-0537, 2019 WL 3284737, at *3 (Del. Ch. July 22, 2019), which holds that a buyer can provide "reasonable detail" of the legal basis for an indemnification claim by asserting that the seller's conduct breached warranties and representations in the parties' agreement, even if the buyer doesn't list the specific warranties and representations. The *Horton* court reasoned that a general reference to the agreement is sufficient because parties to a contract are expected to know its provisions. *Id.* Lauritsen cites no contrary authority, and the court finds *Horton* persuasive.

Second, Lauritsen argues that the agreement's dispute resolution process only makes sense if the buyer is required to identify specific sections of the agreement in the notice of claims. Lauritsen notes that once notice is delivered, "the representation, warranty, covenant, or agreement that is the subject of such claim shall survive" until the claim is resolved, Dkt. 31-1, § 7.1, and she notes that if the seller disputes the claims, the seller is required to submit a written response providing "a summary in reasonable detail of the factual, contractual, and legal grounds for such dispute." *Id.* Lauritsen says that these provisions of § 7.1 would be

ineffectual if the buyer did not identify specific sections of the agreement, because then the seller would have no notice of what sections survived or what legal and contractual grounds to include in her response. But defendants in breach of contract cases routinely respond to complaints without knowing the exact provisions of the contract at issue, because they can identify the plaintiff's precise legal position through discovery. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (complaint was sufficient when it generally described how the defendant had breached the parties' contract). Lauritsen is correct that the dispute resolution process might be smoother if the notice of claims included the relevant sections of the contract, but nothing in § 7.1 unambiguously requires that.

Third, Lauritsen points out that the contract in *Prairie Capital* contained only a notice provision, whereas the contract in this case contained both a notice provision and a subsequent dispute resolution procedure. Thus, Lauritsen argues that *Prairie Capital* "would not rescue R&R [Media] from its failure to comply with pre-litigation dispute resolution procedures." Dkt. 48. But Lauritsen doesn't say what R&R Media failed to do during the dispute resolution process other than provide adequate notice. This argument is undeveloped, so it is forfeited. *See Irish v. BNSF Ry. Co.*, 674 F.3d 710, 714–16 (7th Cir. 2012).

In sum, the parties in this case could have bargained for an obligation to identify particular sections of the contract in their written notices of claims, but they did not do so. Consistent with *Thompson*, *Prairie Capital*, and *Horton*, the court concludes that R&R Media did not have to identify the specific sections that Lauritsen allegedly breached, as long as it provided the factual basis for its claims.

That leaves the question whether R&R Media did in fact provide the factual basis for its claims under §§ 2.7, 3.5, 3.6(j), 3.6(l), 3.6(n), 3.6(o), 3.9(c), and 3.17(a) in its notices of

claims. Lauritsen did not dispute the factual sufficiency of the notices until her reply brief, so she has forfeited this argument. *White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021) (arguments raised for first time in reply brief are waived). In any event, Lauritsen's arguments about the factual sufficiency of the notices are really substantive disputes about whether her conduct breached the stock purchase agreement. She doesn't dispute that the conduct R&R Media described in the claims notices is the same conduct that now underlies R&R Media's breach of contract claims.

## B. Attorney, expert, and consultant fees

Under Delaware law, litigants are generally responsible for their own litigation fees and costs, even if they are the prevailing party. *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007). Parties can override this general rule by including fee-shifting provisions in a contract. *Id.* Lauritsen contends that R&R Media's request for fees fails as a matter of the law because the stock purchase agreement did not include a fee-shifting provision.

Fee-shifting departs from the general rule that parties bear their own costs, so Delaware courts require contracts to contain a "clear and unequivocal" statement of the parties' intent to shift fees. *Four Cents Holdings, LLC v. M&E Printing, Inc.*, No. N23C-08-212, 2025 WL 2366460, at *7 (Del. Super. Ct. Aug. 12, 2025); *River Valley Ingredients, LLC v. Am. Protein*s, No. N19C-12-160 PRW CCLD, 2026 WL 1182418, at *4 (Del. Super. Ct. Apr. 30, 2026); *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, No. CIV.A. 4586-CS, 2013 WL 1955012, at *45 (Del. Ch. May 13, 2013); *Winshall v. Viacom Int'l Inc.*, No. CVN15C06137EMDCCLD, 2019 WL 5787989, at *5 (Del. Super. Ct. Nov. 6, 2019), *aff'd,* 237 A.3d 67 (Del. 2020). R&R Media relies on § 7.1 of the stock purchase agreement, which is the parties' indemnification provision. Indemnification provisions

traditionally cover losses associated with the parties' indemnity obligations, not fees related to first-party litigation over a breach of the agreement itself. *River Valley Ingredients*, 2026 WL 1182418, at *4. Therefore, courts presume that indemnification provisions do not allow for fee-shifting in first-party cases, even if the contract lists attorney fees among the losses subject to indemnification. *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, No. CV 7906, 2020 WL 7861336, at *5–*6 (Del. Ch. Dec. 31, 2020), *aff'd sub nom. Herzog v. Great Hill Equity Partners IV, LP*, 269 A.3d 983 (Del. 2021); *see also Four Cent Holdings*, 2025 WL 2366460, at *7; *River Valley Ingredients*, 2026 WL 1182418, at *4. This presumption may be overcome only by a clear statement of intent for the indemnification provision to shift fees to prevailing parties in first-party claims. *Id.*

R&R Media asserts that the indemnification provision contains a clear statement of intent to shift fees. R&R Media points out that the definition of "losses" subject to indemnification explicitly includes fees. Dkt. 31-1, § 1.1, at 6. And R&R Media notes that the indemnification provision includes a separate dispute resolution process "for any indemnification claim that does not involve a Third Party Claim," arguing that this language implies that the indemnification provision applies to first-party claims. But Delaware courts have repeatedly rejected arguments to read in fee-shifting provisions by implication, concluding that provisions that only imply the possibility of fee-shifting in first-party claims are not clear and unequivocal statements of intent. *Four Cent Holdings*, 2025 WL 2366460, at *7 (indemnification provision that applied "whether or not involving a Third Party Claim" was not a clear and unequivocal fee-shifting provision); *Great Hill Equity Partners*, 2020 WL 7861336, at *6 *(*indemnification provision that applied to losses "whether or not arising out of third party claims" was not a clear and unequivocal fee-shifting provision). R&R Media

points to no provision within the stock purchase agreement that clearly and unequivocally provides for fee-shifting in a contract dispute between the parties, so the court concludes that it is not entitled to fees under the stock purchase agreement.

Nevertheless, the court will deny Lauritsen's motion for summary judgment on the fees issue, because R&R Media may be entitled to fees on grounds other than the stock purchase agreement. In its response brief, R&R Media points out that courts may award attorney fees upon a showing of bad faith by the losing party, including litigation conduct that unnecessarily prolongs the proceedings or pre-litigation conduct "of a sufficiently egregious nature." *Enhabit, Inc. v. Nautic Partners IX, L.P.,* No. 2022-0837, 2024 WL 4929729, at *43 (Del. Ch. Dec. 2, 2024). R&R Media also argues that fees can be awarded in certain cases on equitable grounds. Dkt. 43, at 21 (citing *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 421–22). In her reply brief, Lauritsen argues that R&R Media did not adduce sufficient evidence to support an award of fees on these grounds. But the non-moving party on summary judgment is not required to present evidence on issues not raised by the moving party. *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011). In her summary judgment brief, Lauritsen contended only that fees were not available under the stock purchase agreement, so she forfeited any arguments about other grounds for fee-shifting. *Id.*

CONCLUSION

The court will deny Lauritsen's motion for partial summary judgment, and this case will proceed to a bench trial on all of R&R Media's claims and its request for attorney fees.

Two issues remain. First, the court is in the process of revising its procedures for bench trials. So, in preparing their pretrial submissions, the parties should follow the court's

procedures on *jury* trials, attachment to Dkt. 13, at pages 9 and 14, with the following exceptions: (1) no proposed voir dire, jury instructions, or special verdict forms are necessary; and (2) on the day motions in limine are due, each party should also submit a trial brief that includes the following: (a) any stipulated facts; (b) a summary of facts the party needs to prove; (c) points of law important to the party's position; and (d) issues the party wants the court to decide in its favor. No proposed findings of fact are necessary. The parties may submit a short response to the other side's trial brief on the same date that responses to motions in limine are due.

Second, the parties have filed almost every document in this case under seal, including the complaint, their briefs in support of summary judgment, and their proposed findings of fact. The redacted versions of these documents omit every reference to the parties' stock purchase agreement. The parties' reason for the redactions appears to be that they agreed to keep their stock purchase agreement confidential. But when litigants ask the court to interpret and enforce a contract, "the contract enters the record of the case and thus becomes available to the public, unless it contains information such as trade secrets that may legitimately be kept confidential." *Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 636–37 (7th Cir. 2002); *see also Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000). Parties may agree to a protective order to facilitate discovery of confidential information, but once the discovered information is filed in court and forms the basis of a judicial decision, it ordinarily must be disclosed. *Union Oil*, 220 F.3d at 567–68 (7th Cir. 2000) ("the parties' confidentiality agreement cannot require a court to hide a whole case from view").

Based on the court's own review of the stock purchase agreement, it appears that there is little to no legitimately confidential information in the agreement. Accordingly, the court

will give the parties until May 26, 2026, to file an unredacted copy of the stock purchase agreement on the docket. If the parties believe that there is any information in the agreement that may legitimately be kept confidential, they may redact only that information, and they should file a short brief explaining why the information may be kept confidential under circuit law.

ORDER

IT IS ORDERED that:

1. Defendant Peggy Lauritsen's motion for partial summary judgment, Dkt. 26, is DENIED.

2. The parties' stipulation on diversity jurisdiction, Dkt. 55, is ACCEPTED.

3. The parties have until May 26, 2026, to file an unredacted copy of the stock purchase agreement on the docket. If the parties believe that there is any information in the agreement that may legitimately be kept confidential, they may redact only that information, and they should file a short brief explaining why the information may be kept confidential under circuit law.

Entered May 11, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge