IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

R&R MEDIA GROUP, LLC,

Plaintiff,

v.

PEGGY LAURITSEN,

Defendant.

OPINION and ORDER

24-cv-856-jdp

---

Plaintiff R&R Media Group, LLC purchased a company, Peggy Lauritsen Design Group (PLDG) from defendant Peggy Lauritsen pursuant to a stock purchase agreement. R&R Media now asserts claims for breach of contract and fraudulent inducement, alleging that in the lead up to the sale, Lauritsen manipulated financial data and failed to disclose that the company's largest client was dissatisfied with its work. This case is set for a bench trial on July 13, 2026. This order addresses the parties' motions in limine.

ANALYSIS

**A. R&R Media's motions in limine**

**1. Enforce section 7.7 of the stock purchase agreement**

R&R Media asks the court to "enforce" section 7.7 of the parties' stock purchase agreement, which reads:

> **Acknowledgment of Seller; No Reliance**. Buyer's right to indemnification payment, reimbursement, or other remedy based upon any representation, warranty, covenant, or obligation will not be affected by any investigation conducted or any knowledge acquired at any time, whether before or after the Closing Date, with respect to the accuracy or inaccuracy of, or compliance with, such representation, warranty, covenant, or obligation.

R&R Media argues that under § 7.7, Lauritsen is liable for breach of representations and warranties in the stock purchase agreement even if R&R Media knew that the representations and warranties were false. Thus, R&R Media asks the court to "disallow" any defense based on R&R Media's knowledge of the falsity of Lauritsen's representations and warranties.

The court will deny this motion. As an initial matter, motions in limine are designed to resolve issues of admissibility; they're not appropriate vehicles to get a ruling on the merits of a claim or defense. *Gorins v. Sauerwein*, No. 25-cv-294-jdp, 2026 WL 1662590 (W.D. Wis. June 9, 2026). R&R's Media's request to "disallow" a defense is not a proper motion in limine. And even if the court construes R&R Media's motion as a request to exclude evidence about R&R Media's knowledge of the falsity of Lauritsen's representations, the court would deny that motion. Section 7.7 of the stock purchase agreement applies only to R&R Media's breach of contract claims. R&R Media is also asserting fraudulent inducement claims, which require it to prove not only that Lauritsen made false representations, but also that R&R Media justifiably relied on those representations. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).[1] R&R Media's knowledge of the falsity of Lauritsen's representations is unquestionably relevant to the issue of justifiable reliance.

2. **Enforce section 7.6 of the stock purchase agreement**

R&R Media also asks the court to "enforce" section 7.6 of the stock purchase agreement, which reads:

> **Materiality.** For purposes of calculating the amount of any Losses incurred in connection with any misrepresentation or breach or inaccuracy of any representation or warranty of any Party in ARTICLE III, ARTICLE IV or ARTICLE V, any and all

---

[1] The parties agree that Delaware law applies to both the breach of contract and fraudulent inducement claims.

> references to "materiality" or "Material Adverse Effect" (or other correlative or similar terms) shall be disregarded and each representation or warranty made by any Party in ARTICLE III, ARTICLE IV or ARTICLE V, as applicable, shall be deemed made without any such qualifications or limitations.

Citing § 7.6, R&R Media asks the court to prevent Lauritsen from arguing that her breaches of the representations and warranties in Articles III, IV and V of the stock purchase agreement were not material. As explained above, this is not a proper motion in limine because it concerns the merits of a possible defense, not the admissibility of evidence. This motion will be denied.

### 3.  Prevent Lauritsen's witnesses from offering expert testimony

R&R Media seeks to exclude expert testimony from Roben Hunter, Jordan Dixon, Jason Marvin, Jan Tylko, Anne Quinn, and Darren Mize, because they did not provide written expert reports under Federal Rule of Civil Procedure 26(a)(2)(B).

Lauritsen says that she does not intend to call Tylko, Quinn, or Mize, so R&R Media's motion will be denied as moot for those witnesses. That leaves Hunter, Dixon, and Marvin, who are all accountants who provided accounting services to PLDG before and during the sale. (Hunter is also an attorney; she provided some advice to PLDG in that capacity as well.) Hunter, Dixon, and Marvin are expected to testify about PLDG's prebilling practices in 2022 and 2023, including providing expert opinions about whether the prebilling practices complied with generally accepted accounting principles. Hunter is also expected to testify about cash payments that Lauritsen gave to PDLG employees after the sale, which Lauritsen says were personal gifts, but which R&R Media characterizes as improper deferred compensation.

The parties' dispute centers on whether Hunter, Dixon, and Marvin were required to provide written expert reports under either Federal Rule of Civil Procedure 26 or this court's

procedures. Rule 26(a)(2)(B) requires a written expert report from any expert witness who is "retained or specially employed to provide expert testimony in the case." And this court's procedures also require written reports from "any employee of a party who will be offering expert opinions during any phase of the case." Dkt. 13, at 2. Written reports are not required from non-employee experts who were personally involved in the events at issue in the case, as opposed to being retained or specially employed to provide expert testimony. *See Meyers v. Nat'l R.R. Passenger Corp. (Amtrak),* 619 F.3d 729, 734–35 (7th Cir. 2010).[2]

R&R Media asserts that Hunter, Dixon, and Marvin were required to provide written reports for two reasons. First, it contends that Hunter and Dixon were Lauritsen's employees at PLDG, so written reports were required under this court's procedures. But R&R Media provides no evidence that Hunter or Dixon were PLDG employees, and that assertion is contradicted by the record. In her expert witness disclosures, Lauritsen says that Hunter is an employee of Hunter Advisors, PLLC, who Lauritsen hired to assist with the sale of PLDG. Dkt. 74-9, at 3. And Dixon was an employee of accounting firm Accurant, which PLDG hired in 2022 to perform accounting services. Dkt. 96 (Dixon Dep. 10:2–12; 18:2–21).

Second, R&R Media contends that Hunter, Dixon, and Marvin plan to offer expert testimony about matters outside of the work that they performed for PLDG, so they should be treated as retained experts as opposed to non-retained experts. R&R Media cites *Meyers*, in which the court of appeals held that the plaintiff's treating physicians needed to prepare a written report when they opined about the cause of the plaintiff's injuries solely for the purpose

---

[2] Although they don't have to provide written reports, non-retained experts still have to be disclosed under Rule 26(a)(2)(C). Lauritsen did so, Dkt. 74-9, and R&R Media does not contend that her disclosures were insufficient to comply with Rule 26(a)(2)(C).

of the litigation and not in the ordinary course of treating the plaintiff. 619 F.3d at 735. Lauritsen does not dispute the general rule that non-retained experts are limited to opinions developed in the course of their personal involvement in the case. But she argues that Hunter, Dixon, and Marvin's expert testimony will be limited to the opinions that they developed in the course of their work for PLDG.

The court will deny R&R Media's motion to exclude Hunter, Dixon, and Marvin's expert testimony. In its motion, R&R Media does not identify any specific testimony from any of these witnesses that it wants excluded, and based on Lauritsen's description of their expected testimony, it appears that all or almost all of what they will testify about is within the scope of their work for PLDG. If these witnesses do offer any testimony outside the scope of their work for PLDG, R&R Media can object to that testimony specifically.

### 4. Calculation of compensatory damages

R&R Media expects Lauritsen to argue at trial that compensatory damages should be limited to 3.5x the amount of the prebills that PLDG improperly counted as revenue. This is because PLDG's purchase price was calculated using a 3.5x multiple of revenue, so the price that R&R Media should have paid could theoretically be calculated by subtracting the improperly counted prebills from the revenue and then applying the multiple. But in its fourth motion in limine, R&R Media seeks to preclude Lauritsen from arguing that compensatory damages should be calculated this way, or from arguing that R&R Media's own calculation of its compensatory damages is speculative. R&R Media's reasoning is that Lauritsen destroyed thousands of PLDG records after the sale closed, which has prevented R&R Media from identifying the true amount of improperly counted prebills or from precisely calculating the amount of compensatory damages.

R&R Media is correct that, if Lauritsen's destruction of records has prevented R&R Media from accurately quantifying its damages, the court may consider that in determining the amount of damages. *BCS Servs., Inc. v. BG Invs., Inc.*, 728 F.3d 633, 639 (7th Cir. 2013) (where "defendants' misconduct prevent[s] the plaintiffs from calculating damages accurately . . . damages can be estimated by methods that would be deemed impermissibly speculative in other contexts"). But the court will deny R&R Media's motion in limine and reserve a ruling on the damages calculation issue until after the court has heard the evidence. At that point, it will be clearer whether Lauritsen's destruction of records may have affected R&R Media's ability to calculate its damages. Nor is there any need to rule on the calculation of damages issue now. Because this case will be presented to the court as opposed to a jury, there is no possibility that a jury will hear improper evidence or become confused about how to calculate damages.

### 5. Former employee testimony

R&R Media seeks to prevent Lauritsen from introducing testimony from former PLDG employees about Sara Rahn's alleged mismanagement of PLDG after the sale closed. (Rahn is the owner of R&R Media.) Specifically, R&R Media expects Lauritsen to call several former employees who worked with PLDG's largest client, UnitedHealth Group, who will testify that they resigned from PLDG because Rahn created a toxic work culture. Lauritsen's theory is that the resignation of these employees, not anything that happened before the sale, caused UnitedHealth Group to stop working with PLDG.

R&R Media argues that Rahn's alleged mismanagement is irrelevant because this case is about misrepresentations that Lauritsen made before the sale, not anything that Rahn did after the sale. Lauritsen counters that Rahn's post-sale mismanagement is relevant to multiple

issues, including (1) whether UnitedHealth Group was involved in a "material dispute" with PLDG at the time of the sale, and thus whether Lauritsen violated the stock purchase agreement by failing to disclose the dispute to R&R Media; and (2) the extent of R&R Media's damages.

Rahn's post-sale conduct is not relevant to whether UnitedHealth Group had a "material dispute" with PLDG at the time of sale. "Material" is not defined in the stock purchase agreement, but it generally means information that a reasonable decisionmaker would consider important in determining his choice of action. *See Material*, Black's Law Dictionary (12th ed. 2024) ("Of such a nature that knowledge of the item would affect a person's decision-making; significant; essential"); *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 434 (7th Cir. 1987) (in the context of federal securities law). Nobody involved in the sale of PLDG knew at that time whether UnitedHealth Group would ultimately decide to part ways with PLDG, so its reasons for doing so months later are not relevant to whether UnitedHealth Group's dispute with PLDG at the time of sale was "material."

Nevertheless, the court will not exclude testimony about Rahn's post-sale conduct, because that evidence is relevant to R&R Media's damages. R&R Media requests either recission of the sale or compensatory damages for losses caused by Lauritsen's misrepresentations. Rahn's management of PLDG post-sale is relevant both to the equity of awarding recission and to the losses attributable to Lauritsen's alleged misrepresentations.

Alternatively, R&R Media argues that the former employee testimony should be excluded under Federal Rule of Civil Procedure 403, because that testimony will be needlessly cumulative and will distract from the central issues in the case. The court has already explained that the former employee testimony is relevant to R&R damages, and nothing in Rahn's motion

suggests that its probative value is outweighed by the potential prejudicial effect or the risk of undue delay or waste of time. But Rahn makes a fair point about cumulativeness. Lauritsen has identified seven former employees who she says will testify about Rahn's mismanagement of the company, and she has designated deposition testimony for an eighth former employee. Lauritsen should take care to ensure that the testimony about this issue is not cumulative; if she does not, the court will be receptive to objections on this basis.

## B.   Lauritsen's motions in limine

### 1.  Exclude hearsay evidence about UnitedHealth Group's business relationship with PLDG

Lauritsen seeks to exclude five pieces of evidence about UnitedHealth Group's relationship with PLDG as inadmissible hearsay.

First, Lauritsen wants to exclude a 2023 sales plan written by PLDG employee Sandy Gangelhoff in late 2022, in which she listed UnitedHealth Group representative Rob Hagemann as a "threat" because he wanted to "shake things up" and he was a "demanding client." Dkt. 80-1, at 2. The court will not exclude the sales plan as hearsay, for two reasons. First, R&R Media wants to introduce it for purposes other than the truth of the matter asserted, specifically, to show that Lauritsen knew at the time of the sale that UnitedHealth Group was a "threat" to PLDG's business. Second, even if the sales plan is introduced for the truth of the matter asserted, it likely qualifies as a business record under Federal Rule of Evidence 803(6), because Gangelhoff testified in her deposition that she created sales plans on a yearly basis as a regular part of her work for PLDG. Dkt. 81 (Gangelhoff Dep. 16:15–20).

Second, Lauritsen wants to exclude an email that UnitedHealth Group representative Nikki Cron sent to Gangelhoff on June 14, 2023, in which she told Gangelhoff that she was

8

not getting the level of service she expected and that she "may need to shift some work if PLDG can't commit to previous levels of service, talent, and turnarounds." Dkt. 79. This is not hearsay either, because R&R Media isn't introducing it for the truth of the matter asserted. R&R Media doesn't need to show that United HealthGroup was in fact dissatisfied; what matters is whether Lauritsen and the other PLDG employees believed that UnitedHealth Group was dissatisfied at the time of the sale.

Third, Lauritsen wants to prevent Rahn from testifying about things that Rob Hagemann and Nikki Cron said to her after the sale. Lauritsen doesn't identify specific examples in her motion, but R&R Media pointed to one in its response: Rahn testified in her deposition that in December 2023, Hagemann told her that PLDG's work had been deteriorating for more than a year. Dkt. 77 (Rahn Dep. 278:20–23). The court will direct its ruling to that example. If the parties believe that there are other examples to which the ruling doesn't apply, they can raise them at the final pretrial conference or via objections at trial.

R&R Media argues that Hagemann's statement to Rahn is admissible because R&R Media intends to use it for a purpose other than the truth of what Hagemann said; specifically, to show that Rahn discovered only in December 2023 that UnitedHealth Group was dissatisfied with PLDG's work. But Hagemann's statement doesn't show that. The statement shows that Rahn knew by *at least* December 2023 that UnitedHealth Group was dissatisfied with PLDG, but not that that was the first time that Rahn learned that. In any event, the court does not see why Hagemann's statement is necessary to show when Rahn discovered UnitedHealth Group's dissatisfaction, because Rahn could testify to that directly without testifying to what Hagemann said. The court sees no reason for R&R Media to offer Hagemann's statement other than to prove the truth of what Hagemann said.

R&R Media also argues that Hagemann's statement is admissible under the state of mind exception to the hearsay rule. Fed. R. Evidence 803(3). That exception is based on a theory that when a declarant expresses his then-existing state of mind, he has not had time to reflect, fabricate, or misrepresent his thoughts. *U.S. v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992). The state of mind exception has three elements: (1) the statement was contemporaneous with the mental state sought to be proven; (2) the declarant had no time to reflect, that is, no time to fabricate or misrepresent his thoughts; and (3) the declarant's state of mind is relevant to an issue in the case. *Id.*

The state of mind exception does not apply to Hagemann's statement that PLDG's work had been deteriorating for more than a year, because Hagemann wasn't stating his then-existing mental state, but rather his belief about what had been happening over the course of the entire previous year. That belief is not contemporaneous with his statement, and Hagemann would have had ample time to reflect, fabricate, or misrepresent his thoughts on that issue. The court concludes that Hagemann's statement to Rahn is hearsay and that no exception applies, so the motion to exclude it will be granted.

Fourth, Lauritsen wants to exclude Rahn's notes from her December 2023 meeting with Hagemann. Dkt. 80-2. The notes themselves likely fall under the recorded recollection or business records exceptions to the hearsay rule, Fed. R. Evidence 803(5) and 803(6), but to the extent that they describe statements that Hagemann made during the meeting, R&R Media has the same hearsay problem discussed above. But neither side explains how specifically R&R Media intends to use the notes at trial, so the court cannot rule on any potential hearsay issues at this point. The court will deny the motion in limine and Lauritsen can raise specific objections to R&R Media's use of the notes at trial.

Fifth, Lauritsen wants to prevent Rahn from testifying about phone calls that she had with United HealthGroup representatives in 2024, in which they told her that UnitedHealth Group was dropping PLDG as a client because its work was not "innovative" enough. Dkt. 77 (Rahn Dep. 293:1–6). R&R Media says that it wants to introduce this information not for the truth of what the representatives said, but "to establish what information was communicated to Ms. Rahn following the termination of the UHG relationship, what she learned regarding the circumstances surrounding the termination, and how that information affected her understanding of the business and the representations made to her by Lauritsen during the sale process." Dkt. 94, at 23. But R&R Media doesn't explain why Rahn's perceptions of the relationship between PLDG and UnitedHealth Group after the sale matter except to the extent that they reflect the truth about that relationship. The court will grant Lauritsen's motion to exclude Rahn from testifying about what United HealthGroup representatives told her during these phone calls.

## 2.  Exclude certain expert opinions of Todd Clemens

Todd Clemens is R&R Media's accounting expert, who reviewed PLDG's financial statements and other internal records to determine whether they comported with the representations and warranties in the stock purchase agreement. *See* Dkt. 82 (Clemens report). Lauritsen doesn't challenge the primary conclusions in Clemens's report, which are:

- Lauritsen's cash gifts to PLDG employees after the sale, including $250,000 to PLDG president Amy Clarke, were actually deferred compensation under section 102(c) of the Internal Revenue Code, which should have been disclosed to R&R Media as contingent liabilities.

- PLDG improperly classified prebills for work not yet performed as revenue, not liabilities. Because of the improper classification, PLDG's financial statements overstated revenue by $52,991.25 for 2022 and by $26,477.50 for the first three months of 2023.

11

- On December 31, 2022, and May 30, 2023, PLDG adjusted its 2021 and 2022 revenue down by $43,216.60 and $31,087.50 respectively. These adjustments were not recognized on the financial statements that the parties used to calculate PLDG's purchase price, so the purchase price was inflated.

Instead, Lauritsen challenges two other opinions in Clemens's report, which she argues are improper "non-accounting opinions" that Clemens is not qualified to give and that are entirely speculative. First, Clemens opined that Lauritsen gave Amy Clarke the $250,000 cash gift to encourage her to stay at PLDG without raising her salary:

> Amy Clarke knew she would receive sales proceeds from the business's sale; this arrangement is considered deferred compensation to encourage her to stay given current pay and market conditions. Without it, PLDG likely would have paid Amy a higher salary, reducing profitability. The award was not disclosed to R&R as part of Amy's compensation package.

Dkt. 82, at 2. Second, Clemens opined that PLDG knew that its prebills were liabilities, because in email correspondence, PLDG staff expressed concerns that clients might request refunds for outstanding prebills:

> An email dated June 8, 2023 from Amy Clarke to Peggy Lauritsen about prebill adjustments suggests that PLDG was reluctant to approach a certain customer, fearing it might prompt questions about other closed prebill amounts. This correspondence, along with other sources, indicates that the prebilled work should have been treated as a liability, making R&R Media Group, LLC responsible for providing future services or issuing refunds for any remaining prebills.

*Id.* at 3.

Under Federal Rule of Evidence 702, expert testimony is admissible only if the individual proffering the testimony is qualified as an expert, the expert's opinion is based on reliable methods, and the methods are reliably applied to the facts of the case. "Mere conclusions, without a hint of an inferential process, are useless to the court." *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011). In his report, Clemens

12

explained how his three primary conclusions were supported by PLDG's financial statements. But he gave no explanation for his opinion that Lauritsen gave Amy Clarke a cash payment to "encourage her to stay given current pay and market conditions," or that without the cash payment, PLDG "likely would have paid Amy a higher salary." And as for Clemens's opinion about the meaning of the June 8, 2023 prebilling email. Clemens has no special expertise on that issue, and it is up to the court as the factfinder in this case to determine what inferences to draw from the email. The court will grant Lauritsen's motion to exclude these opinions.

The court will also grant Lauritsen's motion to exclude Clemens's opinion that the errors in PLDG's financial statements "are material to the litigation and directly impact the buyer's rights and remedies under the [stock purchase] agreement," Dkt. 82, at 4. That opinion is an inadmissible legal conclusion. *See Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) ("[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."). R&R Media argues that Clemens was "simply noting his opinion, based on his professional experience, that the issues he discusses in his report are typically important to a buyer in Ms. Rahn's position." Dkt. 94, at 27. But that's not what Clemens wrote in his report. His statement was not about what might be important to a buyer in Rahn's position; it was directed squarely at the legal question of whether Lauritsen violated representations and warranties in the stock purchase agreement.

### 3.  Exclude undisclosed accounting opinions

Finally, Lauritsen seeks to exclude Clemens from offering any accounting opinions other than those disclosed in his expert report, and to exclude "any undisclosed accounting opinions from any other of Plaintiff's witnesses, including Sara Rahn." R&R Media does not oppose limiting Clemens to the opinions in his report, nor does it dispute the general principle that its

witnesses cannot offer undisclosed expert opinions about accounting issues. Lauritsen's motion in limine will be granted as unopposed.

One clarifying point. In response to Lauritsen's motion about "undisclosed accounting opinions" from R&R Media's other witnesses, R&R Media agrees that it cannot have its non-accountant witnesses provide opinions that specific prebills were improperly counted as revenue. But R&R Media argues that it can introduce evidence through non-accountant witnesses that PLDG's prebilling problem was more widespread than Clemens found when he reviewed the financial records. R&R Media's theory is that Lauritsen deleted many PLDG records that would have shown additional prebilling errors, so the specific errors that Clemens identified were merely the tip of the iceberg. To support that theory, R&R Media wants to introduce testimony from Lauritsen that counting prebills as revenue was a routine practice at PLDG, as well as emails between PLDG staff in which they discuss that practice. The court agrees that this evidence is not undisclosed expert testimony. However, if Lauritsen believes that any specific evidence that R&R Media seeks to introduce at trial crosses the line from fact testimony to expert opinion, then she is free to object.

ORDER

IT IS ORDERED that:

1.  The court rules on plaintiff R&R Media Group, LLC's motions in limine as follows:

    a.  The request to enforce section 7.7 of the stock purchase agreement, Dkt. 69, is DENIED.

    b.  The request to enforce section 7.6 of the stock purchase agreement, Dkt. 70, is DENIED.

    c.  The motion to preclude Lauritsen's witnesses from offering undisclosed expert testimony, Dkt. 71, is DENIED as moot for Jan Tylko, Anne

14

Quinn, and Darren Mize, and is DENIED for Roben Hunter, Jordan Dixon, and Jason Marvin.

d. The motion to limit argument about the calculation of compensatory damages, Dkt. 72, is DENIED.

e. The motion to exclude testimony from former employees about Sara Rahn's leadership, Dkt. 73, is DENIED.

2. The court rules on defendant Peggy Lauritsen's motions in limine, Dkt. 64, as follows:

a. The motion to exclude hearsay evidence about UnitedHealth Group, is GRANTED for Sara Rahn's testimony about statements that Rob Hagemann and other UnitedHealth Group employees made to her about the company's relationship with PLDG. The motion is otherwise DENIED.

b. The motion to exclude Todd Clemens's opinions about why PLDG gave Amy Clarke a cash payment, what PLDG would have done otherwise, what a June 8, 2023, email means, and whether PLDG's statements are "material to the litigation," is GRANTED.

c. The motion to exclude undisclosed accounting opinions is GRANTED as unopposed.

Entered June 26, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

15