IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

R&R MEDIA GROUP, LLC,

Plaintiff,

v.

PEGGY LAURITSEN,

Defendant.

OPINION and ORDER

24-cv-856-jdp

Plaintiff R&R Media Group, LLC purchased a company, Peggy Lauritsen Design Group (PLDG) from defendant Peggy Lauritsen pursuant to a stock purchase agreement. R&R Media later brought suit against Lauritsen for breach of contract and fraudulent inducement, alleging that Lauritsen manipulated financial data about the company and failed to disclose that the company's largest client, United HealthGroup, was dissatisfied with its work. After a bench trial, the court entered judgment for Lauritsen on all claims. Dkt. 124.

Lauritsen now moves for an award of attorney fees under Federal Rule of Civil Procedure 37(c)(2), contending that R&R Media unreasonably failed to admit certain facts about the United HealthGroup claims that Lauritsen later proved at trial. The court agrees that R&R Media should have admitted that United HealthGroup ended its business relationship with PLDG for reasons unrelated to anything that happened before the sale. But most of the fees that Lauritsen has requested are not attributable to proving that fact. The court will award Lauritsen $728.33, which is her fees for designating deposition testimony from the United HealthGroup representatives about their reasons for pulling work from PLDG.

ANALYSIS

Lauritsen's motion concerns fifteen requests for admission that Lauritsen served on R&R Media shortly after the parties deposed United HealthGroup representatives Nikki Cron and Rob Hagemann. Lauritsen contends that after those depositions, R&R Media could no longer reasonably dispute certain facts about United HealthGroup's relationship with PLDG, including that United HealthGroup did not have problems with PLDG before the sale and that United HealthGroup ended its business relationship with PLDG for reasons unrelated to anything that happened before the sale. Lauritsen says that these admissions would have resolved R&R Media's claims related to United HealthGroup, so Lauritsen is entitled to all her attorney fees related to the United HealthGroup claims from the date of R&R Media's denial of the requests for admission.

For its part, R&R Media contends that Lauritsen has not satisfied the requirements for a fee award under Rule 37(c)(2). R&R Media also takes issue with the amount of Lauritsen's requested fees, arguing that many of these expenses cannot be fairly traced to R&R Media's failure to admit the facts at issue.

**A. Entitlement to fees**

Rule 37(c)(2) offers one exception to the general rule that parties bear their own legal expenses. The rule states:

> Failure to Admit. If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);

> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (D) there was other good reason for the failure to admit.

Lauritsen's requests for admission on the United HealthGroup claims can be classified into two categories. The first category concerned problems between PLDG and United HealthGroup at the time of the sale. The following are representative examples of this category of requests:

> **Request No. 1:** Admit that UHG had not been dissatisfied with PLDG's services and work product for at least a year prior to June 16, 2023.
>
> **Request No. 2:** Admit that PLDG was not at risk of losing UHG as a customer as of June 16, 2023.
>
> **Request No. 5:** Admit that UHG did not intend to remove PLDG from its preferred vendor list as of June 16, 2023.
>
> **Request No. 7:** Admit that Ms. Lauritsen did not, in connection with the Transaction, misrepresent the status of PLDG's relationship with UHG.

The second category concerned the reasons why United HealthGroup terminated its business relationship with PLDG six months after the sale. The following are representative examples of this category of requests:

> **Request No. 9:** Admit that Nikki Cron pulled her work from PLDG in December 2023 for reasons unrelated to any issues with PLDG that existed as of June 16, 2023.
>
> **Request No 10:** Admit that UHG terminated its relationship with PLDG because of the direction of PLDG under its new ownership by R&R and concerning behavior exhibited by Sara Rahn.
>
> **Request No. 11:** Admit that UHG terminated its relationship with PLDG for reasons unrelated to any issues or disputes with PLDG that existed as of June 16, 2023.

Dkt. 132-3 (requests for admission); Dkt. 132-4 (R&R Media's responses).

R&R Media contends that fees are not warranted here because Lauritsen's requests for admission involved contested issues on which R&R Media reasonably believed that it might prevail. In evaluating a Rule 37(c)(2) motion, the key question "is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." *United States v. Pecore*, 664 F.3d 1125, 1137 (7th Cir. 2011). The reasonable-belief analysis under Rule 37(c)(2) is "strikingly similar" to the analysis of whether the government's position is "substantially justified" under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). *Id.* That inquiry asks whether the government had a "reasonable basis both in law and fact," or alternatively, whether it's position was "justified to a degree that could satisfy a reasonable person." *Id.* at 1133 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

The court concludes that R&R Media had a reasonable basis to deny the first category of requests for admission, which were about problems between PLDG and UnitedHealth Group before the sale. At trial, R&R Media relied heavily on an email from United HealthGroup representative Nikki Cron to PLDG sent shortly before the sale, in which Cron said that PLDG's work had become "slower and sloppier" and that Cron "may need to shift some work if PLDG can't commit to previous levels of service, talent and turnarounds." Pl. Ex. 113. R&R Media argued that this email represented a significant rupture in PLDG's relationship with United HealthGroup, which should have been disclosed pursuant to the parties' stock purchase agreement.

In its oral ruling, the court rejected R&R Media's characterization of the Nikki Cron email, finding that it "was a client concern that required a response, but it wasn't an event that was outside normal client service operations." Dkt. 127, at 9:22–24. But that doesn't mean

that R&R Media's position was unreasonable. R&R had a reasonable basis for interpreting the Nikki Cron email to mean that United HealthGroup had been dissatisfied with PLDG's work and was considering pulling some of its business, even if the court ultimately disagreed with that conclusion.

The second category of requests for admission, which relate to United HealthGroup's reasons for terminating its business relationship with PLDG, are a different matter. United HealthGroup representatives Nikki Cron and Rob Hagemann were the key decisionmakers behind the termination, and they both testified unequivocally that United HealthGroup pulled its business because of events that happened *after* the sale; specifically, because key PLDG staff resigned and because United HealthGroup was conducting an enterprise-wide culling of its agency partnerships. *See* Dkt. 78 (Cron Dep. 68:15–69:4; 73:8–22; 83:14–23; 84:3–11); Dkt. 80 (Hagemann Dep. 65:12–66:2; 86:20–87:2). Neither side had any evidence about the reasons for United HealthGroup's decision other than Cron and Hagemann's testimony, so after those depositions, R&R Media no longer had a reasonable ground to assert that pre-sale issues contributed to United HealthGroup's decision to pull its business.

R&R Media insists that it could still have reasonably believed that pre-sale issues played some causal role, because Nikki Cron had threatened to "shift some work" in her pre-sale email and because R&R Media's owner Sarah Rahn remembered Hagemann telling her that United HealthGroup had had problems with PLDG for at least a year. But in her deposition, Cron testified that PLDG had fixed the issues that she raised in her pre-sale email, and when asked whether those issues played any role in her decision to stop working with PLDG, she said, "I don't believe so." Dkt. 78 (Cron Dep. 83:23). As for Hagemann, he did not remember telling Rahn that there had been problems with PLDG for at least a year, although he said that it

"would not surprise" him if he had said that. Dkt. 80 (Hagemann Dep. 58:9–13). But all the specific problems that Hagemann identified in his deposition occurred after the sale, including the departure of key PLDG employees, and behavior from Sara Rahn that "caused some concern at large with a wider group of individuals" at United HealthGroup. *Id.* at 85:24–86:6. Cron and Hagemann's testimony was clear: United HealthGroup terminated its business relationship with PLDG because of events that occurred after the sale. Neither the Nikki Cron email nor Hagemann's alleged statement about problems with PLDG provided a reasonable basis for R&R Media to deny that.

R&R Media also contends that fees are unwarranted because it did not refuse to admit any facts that Lauritsen later proved to be true, as required by Rule 37(c)(2). But that's not accurate. Lauritsen asked R&R Media to admit that "[United HealthGroup] terminated its relationship with PLDG for reasons unrelated to any issues or disputes with PLDG that existed as of June 16, 2023." Dkt. 132-4, RFA No. 11. In its oral ruling, the court found that the business relationship between PLDG and United HealthGroup ended because of an enterprise-wide reduction in agency partnerships and because of the departure of key staff, and that it "had nothing to do with the Nikki Cron email or anything that had happened at PLDG." Dkt. 127, at 11:16–17. That finding is essentially identical to what Lauritsen asked R&R Media to admit.

The court concludes that R&R Media unreasonably failed to admit that United HealthGroup ended its business relationship with PLDG for reasons unrelated to any pre-sale events. The remaining question is the amount of fees that Lauritsen is entitled to as a result.

**B. Amount of fees**

Under Rule 37(c)(2), the court must award Lauritsen her "reasonable expenses, including attorney's fees, incurred" in proving the facts that R&R Media unreasonably failed to admit. The key question is, "if the party to whom the requests were sent had admitted the matters that it should have admitted, which facts would the propounding party not have to prove?" *Hicklin Eng'g, L.C. v. Bartell*, No. 00-C-1516, 2005 WL 3805914, at *1 (E.D. Wis. Mar. 31, 2005) (quoting 3 James Wm. Moore et al., Moore's Federal Practice § 13.31 (3d ed. 2004 supp.)). Rule 37(c)(2) allows the propounding party to receive only the attorney fees that they incurred in proving those facts. *Id.*

Lauritsen doesn't dispute the standard, but she nevertheless contends that she is entitled to all the fees she incurred litigating the United HealthGroup claims after R&R Media denied the requests for admission. In Lauritsen's view, if R&R Media had made the requested admissions, it would have been forced to concede the United HealthCare claims in full, so Lauritsen would not have had to litigate those claims any further. At first glance, this is an appealing argument. An admission that United HealthGroup ended its business relationship with PLDG for reasons unrelated to events before the sale would have made it very difficult for R&R Media to prove causation between Lauritsen's alleged breach of contract and R&R Media's asserted damages. But Rule 37(c)(2) is not a general fee-shifting statute for parties who chose to proceed on tenuous claims; it's a narrow discovery sanction that addresses a party's failure to admit specific facts. *See Prepared Food Photos, Inc. v. Sharif Jaber*, No. 22-cv-642, 2026 WL 766226, at *7 (E.D. Wis. Mar. 18, 2026) (noting that counsel's requested fees included general litigation expenses with "no relationship to Defendants' failure to admit").

Here, the court cannot conclude that R&R Media would have been unable to take its United HealthGroup claims to trial if it had admitted the requested facts about the role of pre-sale events in the termination decision. At trial, R&R Media argued that if Sara Rahn had known about the pre-sale issues with United HealthGroup, she would have changed the way that she managed the company post-sale, which might have prevented some of the key employees from leaving and might have ultimately allowed PLDG to retain United HealthGroup's business. R&R Media could have made that argument even if it had admitted that United HealthGroup ended its business relationship with PLDG because of events that happened after the sale. That means that the attorney fees that Lauritsen incurred preparing for and trying the United HealthGroup claims cannot be directly traced to R&R Media's failure to admit.

In reviewing Lauritsen's counsel's billing records, the court sees only one category of expenses that can be fairly traced to R&R Media's failure to admit. That is the expenses related to designating Cron and Hagemann's depositions for trial, because those designations proved why United HealthGroup ended its business relationship with PLDG. Counsel spent 9.5 hours designating deposition testimony, reviewing R&R Media's designations, and drafting objections and counter-designations, for which counsel billed $4,370.[1] Dkt. 132-1. The parties designated testimony from six depositions, so the court will assume that approximately one-third of this amount was related to Cron and Hagemann's depositions, and that about half of those designations concerned the reasons why United HealthGroup ended its relationship

[1] This number reflects a billing entry from June 5, 2026 for 4.0 hours, a billing entry from June 19, 2026, for 2.8 hours, and a billing entry from June 30, 2026, for 2.7 hours.

with PLDG. (Cron and Hagemann also testified about PLDG's prebilling practices.) Accordingly, the court will award Lauritsen one-sixth of $4,370, which is $728.33.

Lauritsen also requests that the court award her the expenses associated with bringing this attorney fees motion, which amount to $14,996 for 32.6 hours of work. Dkt. 132-1 and Dkt. 145-1. When a party prevails on a Rule 37(c)(2) motion, the fees associated with the motion are generally compensable. *Hicklin*, 2005 WL 38505914, at *4; *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 493–94 (6th Cir. 2014). But in determining a reasonable fee award, the court has to consider the degree of the prevailing party's success. *Cf. Farrar v. Hobby*, 506 U.S. 103, 114–15 (1992) (when a § 1983 plaintiff achieves only partial success, a reduction in the resulting fee award may be appropriate). Lauritsen prevailed in showing that R&R Media unreasonably failed to admit certain facts, but the fees that she incurred proving those facts amounted to only $728.33, a fraction of what she requested and far less than the expenses she incurred in bringing the fees motion. The court will not award Lauritsen the fees that she expended bringing the motion.

The court will order R&R Media to pay Lauritsen $728.33 in fees under Rule 37(c)(2).

ORDER

IT IS ORDERED that:

1. Defendant Peggy Lauritsen's motion for attorney fees under Rule 37(c)(2), Dkt. 130, is GRANTED in part and DENIED in part.

2. Plaintiff R&R Media Group, LLC is directed to pay Lauritsen $728.33 in attorney fees under Rule 37(c)(2).

Entered November 10, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge